Jerald WALKER, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–140.

Supreme Court of Wyoming.

Feb. 9, 1993.

Rehearing Denied March 16, 1993.

Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, and Tim Newcomb, Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

MACY, Chief Justice.

In this appeal, we consider whether we are required to reverse convictions for indecent liberties with a minor because of the prosecution's refusal, as well as the county court's and the district court's refusals, to reveal the victims' names to the defendant, Jerald Walker. The victims were identified only as Jane Doe 1 and Jane Doe 2 until some four months after the prosecution had begun. Several months before the criminal trial began, the victims' names were revealed in confidence to the defendant's attorney, but the charging documents, including the information, were never amended to include those names.

We reverse with directions.

The defendant contends that the lack of the victims' names in the charging documents, including the information, deprived him of the effective assistance of his counsel, was prejudicial to his defense, and deprived the courts of jurisdiction to proceed. The State contends that the defendant's attorney provided effective assistance and that the defendant was not prejudiced by the use of the Jane Doe designations for the victims' names.

Article 1, Section 10 of the Wyoming Constitution provides:

In all criminal prosecutions the accused shall have the right to defend in person and by counsel, to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed. When the location of the offense cannot be established with certainty, venue may be placed in the county or district where the corpus delecti [delicti] is found, or in any county or district in which the victim was transported.

Article 1, Section 13 of the Wyoming Constitution provides:

Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger.

We have held that prosecution by information or indictment is proper because a Supreme Court rule, duly adopted, is as "otherwise provided by law." *Barnes v. State,* 642 P.2d 1263, 1266 (Wyo.1982). This Court has provided for prosecutions by information in W.R.Cr.P. 9.[1] At the time this prosecution was initiated, that rule provided:

(a) *Nature and contents.*—All prosecutions shall be by indictment or information and carried on in the name and by the authority of the state of Wyoming, and shall conclude "against the peace and dignity of the state of Wyoming[."] The indictment or information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and it shall be signed by the prosecuting attorney. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown, or that

he committed it by one (1) or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission or any other defect or imperfection which does not tend to prejudice any substantial right of the defendant upon the merits or to mislead the defendant to his prejudice shall not be grounds for dismissal of the indictment or information or for reversal of a conviction. When the information in any case is verified by the prosecuting attorney, it shall be sufficient if the verification is made on information and belief.

(b) *Surplusage.*—The court on motion of the defendant may strike surplusage from the indictment or information.

(c) *Amendment of information.*—An information may be amended in matter of form or of substance at any time before the defendant pleads without leave of court. The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

(d) *Bill of particulars.*—The court for cause may direct the filing of a bill of particulars. A motion for bill of particulars may be made only within ten (10) days after arraignment or at such other time before or after arraignment as may be prescribed by rule or order. The bill of particulars may be amended at any time subject to such conditions as justice requires.

In *Babbitt v. State,* 26 Wyo. 27, 34, 174 P. 188 (1918), we acknowledged and applied a rule which demands:

"[T]he want of a direct, positive and material allegation, in the description of the substance, nature or manner of the offense cannot be supplied by any intendment, argument or implication." (Joyce on Indictments, Sec. 246 et seq., and authorities cited in the notes.)

---

**1.** Revised effective March 24, 1992.

In that case, we held that the information, which charged defacement of ballots in an election, was lacking in "direct and positive allegations" in several respects, and we reversed and ordered vacation of the judgment and discharge of the defendant. 26 Wyo. at 34, 174 P. 188.

In *Town of Green River v. Martin,* 71 Wyo. 81, 254 P.2d 198 (1953), we ordered the acquittal of a defendant who was charged with violating a hawkers and peddlers ordinance because the information did not allege a sale or offer of sale (the defendant was a Jehovah's Witness distributing religious materials). We viewed the defect as being fatal because it was a "material fact or circumstance[ ] necessary to constitute the crime charged." 71 Wyo. at 96, 254 P.2d 198.

These principles are tempered somewhat by our rule that:

> [A]n indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*Hovee v. State,* 596 P.2d 1127, 1131 (Wyo. 1979). *See also Gonzales v. State,* 551 P.2d 929 (Wyo.1976) (per curiam) (citing *Boyd v. State,* 528 P.2d 287 (Wyo.1974), *cert. denied,* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975)).

In the instant case, a criminal complaint was filed on May 7, 1990, which charged the defendant with two counts of taking immodest, immoral, or indecent liberties with a child (Wyo.Stat. § 14-3-105 (1986)). In Count I, the victim was identified as Jane Doe 1, and, in Count II, the victim was identified as Jane Doe 2. A criminal warrant was filed on May 9, 1990, with those same descriptions. The information was filed in the district court on June 5, 1990, and again the same pattern was followed. A preliminary hearing was held in the Natrona County Court on May 29, 1990. At that hearing, the victims were referred to as Jane Does or by their initials. The defendant's counsel asked for the victims' names at that time, but the prosecutor

objected, and the trial judge sustained the objection. At the arraignment held on July 6, 1990, the defendant's counsel objected to the victims being unnamed, and the defendant stood mute rather than plead to the charges. The district court entered a plea of not guilty for him. The prosecutor objected to naming the victims and stated that the defendant knew who they were. On July 19, 1990, the defendant's counsel filed a motion for a bill of particulars which demanded the victims' names, as well as a motion to dismiss the information because it was deficient in that it lacked the victims' names. On August 8, 1990, the district court issued a discovery order, but the prosecution continued to withhold the victims' names. On September 14, 1990, the district court ordered the prosecution to divulge the victims' names to the defendant's counsel. This was achieved by the prosecutor placing a sealed envelope in the record which was labeled, "No-one else can see this but [the defendant's counsel]. Candy 9/19/90. Instructions per [the prosecuting attorney]." The document gave two names, but it did not say which was Jane Doe 1 and which was Jane Doe 2. That document was filed on September 19, 1990. A trial had been scheduled to begin on September 24, 1990, but it was continued. Eventually, the case was tried to a jury in February 1991. The information was never amended. When the evidence phase of the trial was concluded, the jury received Instruction No. 4 which substituted, for the first time, the victims' names for the Jane Doe designations.

In *State v. Robinson,* 229 Kan. 301, 624 P.2d 964 (1981), the Kansas Supreme Court held that an information was fatally defective and voided the convictions because one count of the information contained neither the elements of the offense charged nor the victim's name. 624 P.2d at 968. The Kansas Supreme Court applied its rule "that in a prosecution for a felony, the indictment or information is the jurisdictional instrument upon which an accused stands trial. A conviction based upon an information which does not sufficiently charge the offense for which the accused is

convicted is void." *Id.* Also, it has been held that rape is not a difficult crime to charge with sufficient specificity and that an indictment which includes the elements of the statute, the victim's name, the date of the occurrence, and perhaps the location, will be sufficient. *Hines v. State,* 472 So.2d 386 (Miss.1985); B. ANTHONY MOROS-CO, THE PROSECUTION AND DEFENSE OF SEX CRIMES § 3.07[2] (1991).

We also recognize that some courts have reached results which hold that such a defect in an information is not prejudicial. For instance, in *People v. Schneider,* 178 A.D.2d 934, 579 N.Y.S.2d 500 (1991), the court held that withholding the victims' names did not make the indictment insufficient because the defendant demonstrated a propensity to tamper with the witnesses and because the court surmised that the defendant was aware of the victims' names at the time of his arraignment. In *Sallings v. State,* 789 S.W.2d 408 (Tex.App. 1990), prejudice was not found because the record demonstrated that the victim's name had been disclosed to the defendant's counsel at a pretrial hearing. *See also Stevens v. State,* 822 S.W.2d 810 (Tex.App.1992), *remanded,* 844 S.W.2d 753, 1993 WL 3865 (1993). In *State v. Day,* 129 N.H. 378, 529 A.2d 887 (1987), the court held that the victim's name was not within the definition of the offense, that the defendant knew who the victim was from his earliest contacts with the police, and that the defendant was not prejudiced at trial.

■ Wyoming statutes appropriately seek to protect juvenile victims' names from being "released to the public" when the defendant is charged under Wyo.Stat. §§ 14-3-104 and 14-3-105 (1986). Wyo. Stat. § 14-3-106 (1986). *See also In re VV Publishing Corporation,* 120 N.J. 508, 577 A.2d 412 (1990). However, we are at a loss to locate persuasive authority or legal principles which would justify a holding by this Court that the victims' names may be left out of an information and then withheld from the defendant under such circum-

stances as those presented here. It was error, pure and simple. Under the Wyoming Constitution, this Court is charged with "general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law." Wyo. Const. art. 5, § 2. The criminal complaint, the criminal warrant, and the information used in this case were fatally defective from the time they were filed. Until these documents were filed in plain and definite language, i.e., with the victims' names in this instance, they were void and, thus, the lower courts lacked jurisdiction to proceed further.

The factual circumstances underlying this case have burdened this Court with a profound responsibility. The error committed by the prosecution, and then condoned by the lower courts, is clearly beyond our power to excuse, sanction, or find harmless. We cannot, by "intendment, argument or implication," or by supposition, inference, or surmise, or by wishing it were not so, place material allegations into an information which did not exist. *See* Babbitt, 26 Wyo. at 34, 174 P. 188.

The judgment and sentence is reversed, and the case is remanded to the district court with instructions to vacate the judgment and sentence and discharge the defendant. Because the complaint and information were invalid, double jeopardy did not attach, and the defendant may again be tried for the alleged offenses. 22 C.J.S. *Criminal Law* §§ 214, 236 & 239 (1989).

THOMAS, J., files a specially concurring opinion.

GOLDEN, J., files a dissenting opinion in which CARDINE, J., joins.

THOMAS, Justice, concurring specially.

I can agree with the manner in which this case is disposed of by the majority opinion, although, if left to my own devices, I would simply reverse the conviction and remand it to the County Court under the supervisory authority of this court.[1] If I

1. Wyo. Const. Art. 5, § 2, provides:
    The supreme court shall have general appellate jurisdiction, co-extensive with the state, in

both civil and criminal causes, and shall have a general superintending control over all inferior

were pressed to reach the question of whether an error of law occurred, I well might agree with the dissenting justice that there is no prejudicial error of law requiring reversal. I would not reach that question, however.

I can only perceive the refusal to name the victims in felony charges for taking indecent liberties with minors as nothing more than inane gamesmanship. Ultimately, the disclosure of the identities had to be made, and there is no justification for not advising the defendant of those facts from the outset. A conclusion that the defendant knew the identities of the victims, while perhaps accurate, is consistent only with a presumption of guilt, not a presumption of innocence.

It may be that the prosecutor was relying upon a strained reading of Wyo.Stat. § 14–3–106 (1986), which provides, in pertinent part:

(a) Prior to the filing of an information or indictment charging a violation of W.S. 14–3–104 or 14–3–105, neither the names of the person accused or the victim nor any other information reasonably likely to disclose the identity of the victim shall be released or negligently allowed to be released to the public by any public employee except as authorized by the judge or justice with jurisdiction over the criminal charges. The name of the person accused may be released to the public to aid or facilitate an arrest.

(b) After the filing of an information or indictment and upon the request of a minor victim or another acting on behalf of a minor victim, the trial court may, to the extent necessary to protect the welfare of the minor victim, restrict the disclosure or publication of information reasonably likely to identify the minor victim.

(c) Any person who willfully violates this section or who willfully neglects or refuses to obey any court order made pursuant thereto is guilty of contempt and upon conviction shall be fined not more than one thousand dollars ($1,000.00) or be imprisoned in the county

jail not more than ninety (90) days, or both.

This statute, however, provides ample protection against public disclosure without foreclosing notice to the defendant. Consequently, it would not serve to justify what occurred in this case.

In *Petition of Padget*, 678 P.2d 870 (Wyo.1984), this court clearly recognized the separation of powers doctrine in connection with prosecutorial decisions. In that case, we said, "[o]nce the decision to prosecute has been made, then the judiciary becomes involved, but not before." *Padget*, 678 P.2d at 873. See *Billis v. State*, 800 P.2d 401 (Wyo.1990). The county court, initially, and the district court, later, had the authority to require the prosecutor to disclose the names of the victims. That disclosure should have been required of the prosecutor promptly, upon pain of dismissal of the complaint.

From my perspective, there is no need to decide in this case whether or not an error of law occurred. In the exercise of this court's supervisory authority, we can direct the inferior courts to do what is right in the furtherance of justice. That is exactly what I would do in this instance, and I would rest the decision upon our supervisory authority only, without reaching the question of an error of law.

I can agree with the majority because the case is disposed of in substantially the same way by permitting the refiling of the charges.

GOLDEN, Justice, dissenting, with whom CARDINE, Justice, joins.

I respectfully dissent.

On May 7, 1990, a two-count criminal complaint along with a factually detailed affidavit were filed against the defendant Jerald Walker. Marilyn Hill of the Natrona County, Wyoming, sheriff's office, signed and executed the documents. Count I alleged the commission of indecent liberties with "one known, unnamed Jane Doe 1, age 12 years of age," and Count II alleged the commission of indecent liberties

courts, under such rules and regulations as may

be prescribed by law. (Emphasis added.)

with "one known, unnamed Jane Doe 2, 13 years of age."

The accompanying affidavit recounted in remarkable detail deputy sheriff Tim Rostad's encounter with the defendant and two young girls, Jane Doe 1, whose date of birth is September 2, 1977, and Jane Doe 2, whose date of birth is December 2, 1976. The encounter took place around 5:40 p.m., on April 29, 1990, at a location about four miles south of Highway 220 on Coal Mountain Road. The affidavit also recounted that on May 1, 1990, Ms. Hill had interviewed Jane Doe 1 and Jane Doe 2 and was told by the former about the sexual contact, in graphic detail, between the defendant and the girls on April 29 just before deputy sheriff Rostad arrived at their location.

Based upon the criminal complaint, the county court judge, on May 7, 1990, issued a criminal warrant for the defendant's arrest. On May 10, 1990, appellant's attorney entered a general appearance in the case. Before the preliminary hearing, which was held on May 29, 1990, appellant's attorney did not move to dismiss the criminal complaint; he did not subpoena any witnesses to appear at the preliminary hearing. During the preliminary hearing, appellant's attorney neither moved to dismiss the complaint nor called any witnesses.

At the preliminary hearing, the prosecution called two witnesses, deputy sheriff Rostad and Marilyn Hill. On cross-examination appellant's attorney only once asked deputy sheriff Rostad about the victims' names. Appellant's attorney never asked Marilyn Hill about the victims' names. During their testimony these two witnesses used the victims' initials, A.F. and M.H., when referring to the victims.

From the charging documents, including Ms. Hill's affidavit, and the testimony of the two witnesses, appellant and his attorney knew at the preliminary hearing that the state was charging appellant with being at a specifically described location at a specifically identified time and date in the company of two young girls, whose initials and birth dates were identified, and taking specifically described indecent liberties with them. At no time before and during the preliminary hearing did appellant's attorney request a continuance in order to become better prepared to contest the probable cause determination which is the sole purpose of the preliminary hearing. He voiced no complaint that his defense was hampered.

As a result of the prosecution's showing at the preliminary hearing, the defendant was bound over to stand trial on the indecent liberties charges. Ultimately, a jury found him guilty as charged. The record of that trial reveals that the defendant had known one of the girls for more than a year, the other for several months.

The above and foregoing facts are the only facts of consequence for the purpose of resolving the principal issue raised on appeal by appellant.

As narrowly stated by the defendant, that principal issue is whether the government's conduct of withholding the alleged victims' names from the accused before and during the preliminary hearing fatally compromised the reliability of the preliminary hearing from which the probable cause finding issued. Thus, the only focus of the defendant's challenge to his convictions in district court is on the reliability of the preliminary hearing conducted in the county court.

Unfortunately, the majority of this appellate court misstates that principal issue. The majority has expanded the issue beyond the absence of the victims' names in the criminal complaint to encompass the absence of the victims' names in the information which, of course, is filed in the district court.

Be that as it may, I prefer to stay focused on the issue presented by the defendant, as I do not think it appropriate for this court to frame the issues for litigants. We have resisted the temptation to do that in the past, and the majority does not explain its departure today from that long-standing practice.

The defendant alleges, for the first time on appeal but makes no showing, that since

the prosecution did not state the victims' names in the criminal complaint, the reliability of the probable cause determination at the preliminary hearing was fatally compromised. That is the sum and substance, the essence if you will, of his claim on appeal. It is important to remember that appellant did not allege this error before or during the preliminary hearing. Our time-honored rule in the face of such failure is to disregard the claim on appeal. Again, the majority does not explain its departure from a time-honored rule.

The sole issue is whether the charging documents, here the criminal complaint and attached affidavit, are fatally deficient for not including the names of the victims. In May, 1990, Wyo.R.Crim.P. 3 read:

> The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a commissioner.

In the same time period, Wyo.R.Crim.P. 7 provided the authorization of the preliminary hearing. Such rule or statute authorization was necessary because no common law right to a preliminary hearing exists. *Montez v. State*, 670 P.2d 694 (Wyo.1983). The purpose of a preliminary hearing is to determine whether a sound factual basis exists for continuing to hold the accused for prosecution. More specifically, the purpose is to determine whether sufficient evidence exists to cause a person of ordinary care to conscientiously entertain a reasonable belief that a public offense has been committed in which the accused participated. *Wilson v. State*, 655 P.2d 1246 (Wyo. 1982). The determination of the accused's guilt is not a purpose of the preliminary hearing.

The litigants have not referred us to any cases directly on point. Research reveals, however, several cases dealing with claims that the information, as a charging document, was defective for want of the vic-tim's name. Of those cases, *State v. Day*, 129 N.H. 378, 529 A.2d 887 (1987), is factually similar and instructive.[1] Charging the defendant with sexual conduct with minor victims, the indictments did not specify the victims' names. After conviction, the defendant appealed, claiming the absence of the victims' names in the charging document violated a provision of the New Hampshire Constitution which reads, in relevant part, that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him * * *." *Day*, 529 A.2d at 888 (quoting from Part I, art. 15 of the New Hampshire Constitution.)[2] In the course of rejecting the defendant's claim and affirming the conviction, the court noted that the test is "whether the indictment meets the basic requirements of specificity and fair notice." *Day*, 529 A.2d at 888.

Further, the court observed:

> Thus, to be sufficient, an indictment must state the elements of the offense; the statement thereof must be specific enough to allow adequate trial preparation; and the defendant must be protected from later being placed in jeopardy again for the same offense.

*Day*, 529 A.2d at 888.

The court held that the victim's name is not an attendant circumstance as is included in the definition of the offense. The court reasoned:

> The essential elements of the offense here are that the defendant must have sexually penetrated a person who was under the age of thirteen at the time of the offense. The indictments at issue specified exactly that. The protection of the victim from unnecessary disclosure of her identity, particularly in view of her age, is an appropriate policy concern

---

1. *Accord, Stevens v. State*, 822 S.W.2d 810 (Tex. Ct.App.1992); *Sallings v. State*, 789 S.W.2d 408 (Tex.Ct.App.1990); *see also Mixon v. State*, 632 S.W.2d 836, 837–38 (Tex.Ct.App.1982); *Bryant v. State*, 656 S.W.2d 513 (Tex.App.Ct.1983); and *Alexander v. State*, 820 S.W.2d 821, 822–23 (Tex. App.Ct.1991). *See also, People v. Schneider*, 178 A.D.2d 934, 579 N.Y.S.2d 500 (1991), *appeal denied*, 79 N.Y.2d 1007, 584 N.Y.S.2d 462, 594 N.E.2d 956 (1992).

2. *Cf.*, Wyo. Const. art. 1, § 10, which reads in pertinent part: "In all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation * * *."

of the State, and omission of her name from the indictment was one, though perhaps not the best, way to so protect her. On the facts of this case, in which the omission of the name of the victim did not hobble the defendant's preparation of his defense, the omission does not, *per se*, render the indictment constitutionally insufficient.

It is clear that the defendant knew from his earliest contacts with police who the alleged victim was, and was therefore not prejudiced in his ability to prepare to meet the charges against him at trial. This is thus not a case where the defendant could have been confused as to the identity of the victim described in the indictments. Nor could he be put again in jeopardy for the same offenses, as he would be entitled to rely on the trial record as well as on the indictments in any subsequent attempt to prosecute him.

*Day*, 529 A.2d at 888–89 (citations omitted).

I would apply the above and foregoing reasoning to our case. The criminal complaint and attached affidavit, as charging documents, specified the essential elements and facts of the indecent liberties charges. The record discloses that the prosecutor was concerned about the protection of the victims from unnecessary disclosure of their identities. That is an appropriate policy concern of the state. Omission of the victims' names from the charging documents was one way to so protect them. On the facts of this case, the omission of the victims' names from the charging documents did not hamper the defendant's preparation for or participation in the preliminary hearing—a preliminary hearing is a probable cause proceeding, not a guilt-determination proceeding. The omission does not, *per se*, render the charging documents or the reliability of the preliminary hearing constitutionally insufficient.

This is not a case where the defendant could have been, or was, confused as to the identities of the victims. He had known one for over a year, the other for several months; on the date and at the specific location of the criminal activity he knew

exactly who he was with, their names, and their ages.

I would reject the defendant's claim and affirm the convictions.